

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

Nos. 04-22-00645-CR, 04-22-00646-CR

Hayward Charlie **THOMAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2016-CR-7439, 2017-CR-2286
Honorable Ron Rangel, Judge Presiding

Opinion by:      Patricia O. Alvarez, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Liza A. Rodriguez, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: January 17, 2024

AFFIRMED

Appellant Hayward Charlie Thomas appeals from his revocation of community supervision in two cases. He first argues that his plea of "not true" at his revocation hearing was involuntary and that it harmed him by causing him to forfeit the State's offer to reduce its sentencing recommendation. He next argues that his attorney was ineffective because the attorney 1) did not query Thomas's intent to plead "not true" during the trial court's plea colloquy and 2) did not interrupt him during the hearing to prevent him from giving damaging testimony. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

On September 13, 2022, Thomas's community supervision was revoked in two cases—one for drug possession and one for assault as a second family violence offense. He was sentenced to five years' incarceration.

At the hearing for Thomas's revocation, the State offered to recommend a reduced sentence of three years' incarceration in exchange for a plea of "true," which Thomas rejected. He pleaded "not true" and testified to the circumstances surrounding the allegations against him. The allegations that the State went forward on at the hearing included: 1) failure to obtain and keep gainful and lawful employment, 2) failure to report to his supervising officer in August and October 2021, 3) failure to complete 145 hours of community service, and 4) failure to complete the required battery intervention and prevention program.

First, Thomas's supervising officer testified. She confirmed that Thomas violated the conditions of his community supervision that were at issue in the hearing. Next, Thomas's common law wife testified. She described the couple's financial difficulties that challenged Thomas's ability to comply with his community supervision requirements.

Thomas testified last. He explained that he had difficulties complying with the requirements of his community supervision after he crashed his car several months earlier. He stated that he lived in a rural area that offered no public transportation and no opportunities to volunteer. He stated that he was hired at the Church's Chicken restaurant in his area but that he could not report to work after he was arrested and incarcerated in February 2022. He also lamented that he paid $55 to enroll in the required battery intervention and prevention program and failed to complete it after he crashed his car. He stated that when he attempted to re-enroll, he was placed on a months-long waitlist.

Thomas's attorney prompted him to tell the judge why he needed to be given another opportunity on probation. Thomas responded by admitting that he had not been a model probationer. He began testifying about the circumstances that led to his February 2022 arrest. He explained that he regretted giving a ride to a friend, because the friend was wearing an ankle monitor, carrying drugs, and carrying a gun. An officer stopped Thomas's car because of an alert from his friend's ankle monitor, which led to both men being charged for possession of drugs and a firearm.

The trial court considered the testimony, granted the State's motion to revoke Thomas's community supervision, and sentenced Thomas to five years' imprisonment. This appeal followed.

### STANDARD OF REVIEW

We review a trial court's decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006).

### VOLUNTARINESS OF APPELLANT'S "NOT TRUE" PLEA

**A.     Parties' Arguments**

Thomas argues that his plea of "not true" cost him the State's offer to reduce its sentencing recommendation and was involuntary. The State argues that voluntariness of a "not true" plea is not an appealable issue, and even if it were, Thomas 1) waived the issue and 2) entered a voluntary plea.

**B.     Law**

The voluntariness of a plea is an issue this court reviews when an appellant has waived his rights and complains that he did so involuntarily. *See Hawkins v. State*, No. 01-20-00657-CR, 2021 WL 5903991, at *2 (Tex. App.—Houston [1st Dist.] Dec. 14, 2021, no pet.) (Goodman, J., concurring) (mem. op., not designated for publication) (citing *Bitterman v. State*, 180 S.W.3d 139,

141 (Tex. Crim. App. 2005); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Santobello v. New York*, 404 U.S. 257, 266 (1971) (Douglas, J., concurring)).

A "not guilty" plea, however, requires no independent scrutiny. *See Hawkins v. State*, 660 S.W.2d 65, 78 (Tex. Crim. App. 1983). Every defendant simply has a right to plead "not guilty." *See Stringer v. State*, 241 S.W.3d 52, 57 (Tex. Crim. App. 2007) (citing U.S. CONST. amend. V); *Thomas v. State*, 629 S.W.2d 112, 118 (Tex. App.—Dallas 1981) (Whitham, J., dissenting); *Wallace v. State*, No. 05-13-00098-CR, 2014 WL 2106695, at *2 (Tex. App.—Dallas May 19, 2014, no pet.) (mem. op., not designated for publication). It is the default plea. *See* TEX. CODE CRIM. PROC. ANN. art. 26.12, 27.16(a); *Mendez v. State*, 138 S.W.3d 334, 343 (Tex. Crim. App. 2004) (citing *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)); *Hawkins*, 660 S.W.2d at 78; *Castorela-Chavez v. State*, No. 03-08-00519-CR, 2009 WL 3048702, at *3 (Tex. App.—Austin Sept. 24, 2009, no pet.) (mem. op., not designated for publication) (noting that voluntariness of plea not at issue because appellant pleaded not guilty).

In the context of probation revocation hearings, there is no explicit right to enter any kind of plea. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.558, 42A.751; *Hawkins*, 2021 WL 5903991, at *2 (Goodman, J., concurring) (citing *Ruedas v. State*, 586 S.W.2d 520, 523 (Tex. Crim. App. [Panel Op.] 1979); *Gutierrez v. State*, 108 S.W.3d 304, 310 (Tex. Crim. App. 2003) ("The statutes governing probation do not make reference to article 26.13.")). A defendant in a revocation proceeding is, of course, "entitled to certain due process protections in the revocation proceedings." *Ruedas*, 586 S.W.2d at 523. But a revocation proceeding is a less formal proceeding than a trial: guilt or innocence are not at issue, the burden of proof is lower, and thus the "'full range of constitutional and statutory protections available at a criminal trial' are not implicated." *Hawkins*, 2021 WL 5903991, at *2 (citing *Ruedas*, 586 S.W.2d at 523); *Gutierrez*, 108 S.W.3d at

309. Therefore, it follows that a trial court has no duty to scrutinize either a defendant's rejection of the State's offer to reduce its sentencing recommendation or to conduct an inquiry if the defendant pleads "true" to a probation violation. *See Gutierrez*, 108 S.W.3d at 309.

To the extent that an appellant complains that a "not guilty" or "not true" plea was involuntary due to bad advice of counsel, that complaint must be evaluated under the framework of ineffective assistance of counsel. On its own merit, the voluntariness of a "not guilty" or "not true" plea is not appealable. *See Hawkins*, 660 S.W.2d at 78; *Harris v. State*, No. 03-08-00313-CR, 2009 WL 2902696, at *6 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op., not designated for publication).

## C.    Analysis

As stated, Thomas and counsel for both parties discussed the State's offer to reduce its sentencing recommendation in exchange for a plea of "true" before going forward with testimony at Thomas's revocation hearing, and Thomas rejected the State's offer.

During the trial court's recitation of the State's allegations, Thomas responded to each with a plea of "not true." However, when the trial court recited the third allegation in the hearing (failure to complete 145 hours of community service), Thomas replied, "I only [completed] five [hours of service] so that would be—I plead true, sir." Thomas's attorney interjected, "No, not true." Thomas stated, "Oh, I apologize, sir. Not true." The trial court accepted Thomas's pleas of "not true," and the hearing proceeded with testimony.

Thomas now complains that the trial court should have clarified his intent, i.e., inquired whether he, in fact, meant to enter a plea of true. However, it was Thomas's right to plead "not true." *See Stringer*, 241 S.W.3d at 57. The trial court had no duty to question Thomas's exercise of his right. *See Hawkins*, 660 S.W.2d at 78; *Mendez*, 138 S.W.3d at 350. Therefore, even if the outcome now appears to favor choosing the State's promise to recommend a reduced sentence over

facing sentencing without the benefit of the State's reduced sentencing recommendation, the disparity does not present this court with a question of Thomas's voluntariness when he entered pleas of "not true." *See Hawkins*, 660 S.W.2d at 78. Although Thomas characterizes the change in his response to the third allegation from "true" to "not true" as involuntary after his attorney's intervention, the applicable framework for this complaint is ineffective assistance of counsel,[1] which we address next. Thomas's first issue is overruled.

INEFFECTIVE ASSISTANCE OF COUNSEL

### A.      Parties' Arguments

Thomas argues that his Sixth Amendment right to effective counsel was violated when his attorney 1) failed to interrupt and stop him from giving damaging testimony at his revocation hearing and 2) failed to clarify his intent to plead "not true" at the revocation hearing. The State argues that Thomas failed to meet his burden in showing that his counsel's performance fell below an objective standard of reasonableness.

### B.      Law

An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate two things: deficient performance and prejudice." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018).

To establish deficient performance, an appellant must show that counsel's assistance "fell below an objective standard of reasonableness." *Thompson*, 9 S.W.3d at 812. An appellant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id*. at 813. To defeat this presumption, "[a]ny allegation of

---

[1] *See, e.g.*, *Hollins v. State*, No. 04-98-00629-CR, 1999 WL 685683, at *1 (Tex. App.—San Antonio Sept. 1, 1999, pet. ref'd) (mem. op., not designated for publication).

ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*.

To establish prejudice, an appellant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 812. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

"Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it." *Id*. (internal quotation marks omitted).

"Important also to the inquiry is the part the defendant played in determining the trial strategy to be pursued." *Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim. App. 1986). For example, a defendant might exercise his absolute right to testify[2] against counsel's advice. *See id*. A silent record regarding an attorney's effectiveness sheds no light on this potential issue.

Accordingly, "[a] substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id*. at 813–14.

## C.     Analysis

Here, the record regarding Defense Counsel's performance is undeveloped. *See Prine*, 537 S.W.3d at 117; *Thompson*, 9 S.W.3d at 813–14. Defense Counsel has not had a chance to explain himself. *See Prine*, 537 S.W.3d at 117. As stated, Thomas complains that Defense Counsel's

---

[2] *See Rock v. Arkansas*, 483 U.S. 44, 53 (1987).

performance fell below an objective standard of reasonableness when he 1) failed to clarify his intent to plead "not true" and 2) failed to interrupt and prevent Thomas from giving damaging testimony. But Defense Counsel's strategy could reasonably be construed as an attempt to allow Thomas to explain himself and evoke the trial court's sympathy with his candor. *See Duncan*, 717 S.W.2d at 348. By prompting Thomas to enter pleas of "not true" and asking him to explain to the trial judge why he deserved another opportunity on community supervision, he may have been laying the foundation for a path to keep Thomas out of custody entirely. *See id*. It is also possible that, as the State posited, Thomas asserted his right to testify against his attorney's advice, which would negate a claim of ineffectiveness. *See id*. Based on this record, we cannot conclude that Thomas's counsel's conduct was so outrageous that no competent attorney would have engaged in it, especially without knowing whether Thomas acted against advice of counsel. *See Prine*, 537 S.W.3d at 117; *Duncan*, 717 S.W.2d at 348. We overrule Thomas's second issue.

## CONCLUSION

Based on this record, we conclude that Thomas's voluntariness complaint on its own is unappealable. We also conclude that Thomas has failed in meeting his burden to establish that Defense Counsel's performance fell below an objectively reasonable standard. We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Do Not Publish